1

2   PHIL GREEN
3   GREEN & GREEN
    1000 4th Street
4   Penthouse Suite 875
5   San Rafael, CA 94901
    phil@greenandgreen.com
6
7   SPENCER D. FREEMAN (*pro hac vice*)
    FREEMAN LAW FIRM, INC.
8   2104 N. 30th St.
9   Tacoma, WA 98403
    (253) 383-4500
10  sfreeman@freemanlawfirm.org

11

12              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
13

14

15  FRASERSIDE HOLDINGS, LTD., a          Case No.:  CV 10-5174 JAK (FMO)
    foreign limited liability company
16
17              Plaintiff,               **PLAINTIFF'S MEMORANDUM
                                         OF POINTS AND AUTHORITIES
18        vs.                            IN SUPPORT OF MOTION FOR
                                         DEFAULT JUDGMENT**
19  XOD LLC, a Delaware corporation, d/b/a
    XonDemand, xondemand.com
20                                       Date:  December 5, 2011
                                         Time:  8:30 AM
21              Defendant.

22

23

24

25

26

# TABLE OF CONTENTS

**Page(s)**

I.  PROCEDURAL CONSIDERATIONS                                                          1

    A.  THE COURT HAS JURISDICTION OVER THE SUBJECT MATTER AND            1
        THE DEFENDANT.
    B.  Plaintiff Effected Service of Process on Defendant Pursuant to        2
        Fed.R.Civ.P. 4(h)
    C.  The Facts of the Record Show That a Default Judgment is              2
        Warranted

II.  THE SPECIFIC RELIEF SOUGHT BY PLAINTIFF IS                                        3
    FACTUALLY SUPPORTED AND AUTHORIZED BY LAW

    A.  Defendant Pirated Plaintiff's Works For Commercial Gain              3

    B.  Statutory Damages Are Authorized                                     7

    C.  Plaintiff's Copyrighted Works Are Valuable                           8

    D.  The Infringing Acts Harmed the Value of Plaintiff's Works           11

    E.  The Facts and Law Support A Maximum Statutory Award                 12

    F.  Increased Damages for Willfulness                                   14

    G.  Plaintiff is Entitled to Injunctive Relief and Attorney's Fees      17

III.  DISCUSSION OF EITEL FACTORS                                                     18

    A.  Possibility of Prejudice to Plaintiff                               18

    B.  Merits of Substantive Claims and Sufficiency of Complaint           19

    C.  The Amount of Money at Stake                                        19

    D.  The Remaining Factors                                               19

IV.  CONCLUSION                                                                       20

1

2

# TABLE OF AUTHORITIES

3

| Cases | Page(s) |
|---|---|
| *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir. 1991) | 7 |
| *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.* (259 F.3d 1186 (9th Cir. 2001)(cert denied, 534 U.S. 1127 (2002) | 13 |
| *Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696 (9th Cir. 2008) | 15 |
| *Eitel v. McCool,*782 F.2d 1470 (9th Cir. 1986). | 18, 20 |
| *Ellison v. Robertson*, 357 F.3d 1072, 1076-1077 (2004) | 3 |
| *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228  (1952) | 8, 14 |
| *Fallaci v. New Gazette Literary Corp.*, 568 F.Supp. 1172 (S.D.N.Y. 1983) | 15 |
| *Funky Films, Inc. v. Time Warner Entertainment Company, L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006) | 3 |
| *Geddes v. United Financial Group,* 559 F.2d 557 (9th Cir 1977) | 3 |
| *Hamil America, Inc. v. GFL*, 193 F.3d 92 (2d Cir. 1999) | 3 |
| *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001 (D. Mont. 1990) | 14 |
| *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652 (D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987) | 14 |
| *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283 (2d Cir. 1999) | 17 |
| *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.,* 149 F.3d 987 (9th Cir. 1998) | 14 |
| *Peer International Corporation v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-336 (1990) | 15 |

23

24

25

26

ii

| **Cases** | **Page(s)** |
|---|---|
| *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172 (C.D. Cal. 2002) | 18 |
| *PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F. Supp.2d 1110 (S.D. Fla. 2007) | 18 |
| *Perfect 10, Inc. v. Talisman Communs., Inc*., 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000) | 11, 12, 13 |
| *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co*., 74 F.3d 488 (4th Cir. 1996) | 8 |
| *Tiffany Inc. v. Luban,* 282 F.Supp. 2d 123 (S.D.N.Y. 2003) | 15 |
| *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989) | 15 |
| *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004) | 13 |
| *Warner Bros. Ent, Inc. v. Duhy*, 2009 U.S. Dist. LEXIS 123332 (C.D. Cal. Nov. 30, 2009) | 17 |
| *Yurman Design, Inc. v. PAJ, Inc*., 262 F.2d 101  (2d Cir. 2001) | 3, 13 |

| **Statutes/Rules** | **Page(s)** |
|---|---|
| Fed.R.Civ.P. 55(b)(2) | 3, 20 |
| Fed.R.Civ.P. 4 | 2, 18 |
| H.R. Rep. No. 106-216 (1999) | 8 |
| 15 U.S.C. § 1114(1) | 1 |
| 15 U.S.C. § 1121 | 1 |
| 15 U.S.C. § 1125 | 1 |
| 17 U.S.C. § 101, et seq. | 1 |
| 17 U.S.C. § 502(a) | 5 |
| 17 U.S.C. § 504(c) | 15 |
| 17 U.S.C. § 505 | 8 |
| 28 U.S.C. § 1331 | 1 |
| 28 U.S.C. § 1338 | 1 |
| 28 U.S.C. § 1391 | 1 |
| 28 U.S.C. § 1400 | 1 |

iv

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

1   COMES NOW Plaintiff Fraserside Holdings, Ltd, by and through its

2   undersigned counsel, and respectfully requests that the Court enter Default Judgment

3   against Defendant XOD LLC.  Plaintiff seeks statutory damages, attorney fees, costs,

4   award of domain names, and injunctive relief.

5

6   **I.    PROCEDURAL CONSIDERATIONS**

7

8   **A.    The Court has Jurisdiction over the Subject Matter and the Defendants.**

9   This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 et seq.,

10  Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), 15 U.S.C. § 1121, 15 U.S.C. §

11  1125, 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

12  This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C.

13  §§ 1391(b), (c), and/or (d).  Further, this Court has personal jurisdiction over the

14  Defendants as they have engaged, and continue to engage, in business activities in

15  and directed to this district, and have committed tortious acts within this district or

16  directed at this district.  Additionally, the initial business dealings between the parties

17  occurred in California and the parties specifically consented to jurisdiction of the

18  Courts of California.

19  XOD LLC d/b/a XonDemand and xondemand.com (hereinafter "XOD")

20  registered the domain names xondemand.com and thereafter operated and was

21  commonly known as xondemand.com.

22  Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c) and (d); and

23  28 U.S.C. §1400(a).

24  \\\

25  \\

26  \

---

1

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

**B.**  **Plaintiff Effected Service of Process on Defendants Pursuant to Fed. R. Civ. P. 4(h)**

Service on defendant was made pursuant to the express provision of the Fed. R. Civ. P. (4)(h)(1).

Defendant has been served via personal service on Defendant's Registered Agent and also by mailing a copy to Defendant. Defendant conceded and stipulated that Defendant was properly served. *See* Dkt. No. 9.

**C.**  **The facts of the Record Show That a Default Judgment is Warranted**

Plaintiff Fraserside Holdings, Ltd. (hereinafter "Fraserside" or "Plaintiff") initiated this action against XOD LLC d/b/a XonDemand and xondemand.com on July 14, 2010, seeking damages and injunctive relief for claims of copyright. *See* Dkt. No. 1.

On July 20, 2010, service of Summons and Complaint was made upon XOD in full compliance with Rule 4 of the Federal Rule of Civil Procedure. *See* Dkt. No. 9.

Defendant filed an answer through counsel on August 20, 2010, and thereafter engaged in litigation including filing a motion for summary judgment and motion to dismiss. *See* Dkt. Nos. 10, 14, and 15. Defendant's motions were denied. *See* Dkt. No. 41.

As the parties prepared for trial, a settlement was initially negotiated. *See* Dkt. No. 53. However, as settlement documents were being exchanged, Defendant refused to communicate with Defendant's then-counsel and refused to finalize settlement documents. Defendant's then-counsel served Defendant notice of intent to withdraw, to which there was no response, and Defendant failed to appear at a Show Cause Hearing on September 19, 2011. The Court struck Defendant's Answer and entered default. *See* Dkt. Nos. 61 and 63.

1   On September 19, 2011, at the direction and Order of the Court, the Clerk
2   entered Default as to Defendant XOD LLC.

3   A Court Order entering default judgment against Defendants is now proper
4   pursuant to Fed. R.  Civ. P. 55, and as such, the Court ordered that Plaintiff file a
5   Motion for Default.

6

7   **II.    The Specific Relief Sought by Plaintiff Is Factually Supported and**
8   **Authorized by Law**

9   This Motion for Default Judgment is based on the allegations of the Complaint.
10  *See* Dkt. No. 1.  Defendant has admitted all of the facts therein by failing to respond.
11  *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir 1977).  This Motion
12  also relies on the facts attested to in Defendant's Motion for Summary Judgment,
13  Dkt. No. 14, including Declaration of Frank Ryan, Dkt. No. 17, Declaration of James
14  Moran, Dkt. No. 28, Declaration of Robert Hoover, Dkt. No. 30, and Declaration of
15  Sean Holland, Dkt. No. 31.  In addition, the Declaration of Jason Tucker (hereinafter
16  "Decl. J. Tucker") and Declaration of Spencer Freeman (hereinafter "Decl. S.
17  Freeman") filed in support hereof and additional exhibits filed in support hereof.
18  Those materials are sufficient to justify the requested relief.

19  **A.    Defendant Pirated Plaintiff's Works for Commercial Gain**

20  It is well settled that, "to prevail on a claim of copyright infringement, the
21  Plaintiff must demonstrate both (1) the ownership of a valid copyright and (2)
22  infringement of the copyright by the defendant." *Funky Films, Inc. v. Time Warner*
23  *Entertainment Company, L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006); and *Ellison v.*
24  *Robertson*, 357 F.3d 1072, 1076-1077 (2004); *Yurman Design, Inc. v. PAJ, Inc*., 262
25  F.2d 101, 108-109 (2d Cir. 2001); *Hamil America, Inc. v. GFL*, 193 F.3d 92 (2d Cir.
26  1999).  The facts in the instant matter are absolutely clear.

1    Plaintiff Fraserside, through its parent and parent's subsidiary entities,
2  produces high quality adult entertainment films, which are distributed throughout the
3  world on DVD, through pay-per-view and subscription television, over the Internet
4  through paid subscription and pay-per-view, as well as through pay-per-view closed
5  circuit systems found in many of the world's hotels. Fraserside owns the copyrights
6  and trademarks in those materials and has registered them with the United States
7  Copyright Office. *See* Dkt. No. 1, Complaint, ¶¶ 27-61 showing copyright certificate
8  numbers of Plaintiff's copyrighted intellectual property.

9    Xondemand.com is a website that provides adult-themed audiovisual content to
10  the public.  The sole type of works available on the website appear to be copyrighted
11  videos. These videos are copyrighted works belonging to a number of adult
12  entertainment companies, including Plaintiff.  Defendant's website offers the ability
13  to view videos on a pay per view basis, which financially benefits Defendant. *See*
14  Dkt. No. 1, Complaint, ¶¶ 10-11.

15    XOD,  a Delaware based company with offices in several states throughout the
16  United States, provides video streaming and rental capabilities on demand to
17  customers over the Internet for a fee through its web site www.xondemand.com.
18  XOD garners users to its web property through various marketing methods and
19  sources including, but not limited to, Internet search engines such as Google, Yahoo!,
20  and AOL, as well as an affiliate based program that pays third parties to market its
21  web sites in exchange for a percentage of sales generated. *See* Dkt. No. 1, Complaint,
22  ¶¶ 10-11.

23    So valuable was Fraserside's copyrighted work to Defendant, that Defendant
24  specifically referenced Plaintiff's videos in their affiliate promotional materials.
25  *Decl. J. Tucker,* p 4, ¶ 15, Ex. A.  Defendant's website xondemand.com is ranked
26  with the top video demand websites in the world.  Defendant is near the top of all

search results for adult video on demand web site on the three most prominent and important Internet search engines, Google, Yahoo!, and AOL. *Decl. J. Tucker,* p 4-5, ¶¶ 16-18, Exs. B-D. There is no doubting the magnitude of Defendant in the market place, and no doubting their use of Fraserside's copyrighted materials to reach its position.

Defendant XOD charges the user by the minute for viewing full-length video content on Defendant's website. Defendant's website also includes banners and advertisements that appear on pages containing Plaintiff's copyrighted works. In otherwords, whenever a user would review Plaintiff's copyrighted work, whether to view in on a pay per minute basis or for a preview, banners and/or pop up advertisements would appear for the user to see. The banners and pop up advertising provide revenue to, without any of the advertising revenue being shared with (or even reported to) the Plaintiff. *Decl. J. Tucker,* p 5, ¶ 19.

On March 2, 2006, Fraserside and XOD entered into a Video Streaming Agreement wherein Fraserside would provide XOD with 200 branded films for purpose of allowing XOD customers to pay for viewing of the films. XOD was to pay Fraserside fifty percent (50%) of gross revenues. On March 5, 2007, Fraserside terminated the Video Streaming Agreement according to and in compliance with the terms of the Agreement, including confirmed delivery by certified mail of the written notice of termination. Termination of the Agreement terminated any license XOD had to displayed Fraserside's copyrighted works or trademarks. *See* Dkt. No. 1, Complaint, ¶¶ 12-17.

In May 2010, three years after termination of the Video Streaming Agreement, Plaintiff Fraserside discovered over thirty (30) copies of its copyrighted material illegally shared on Defendant's website. Users could view the entirety of thirty of Frasersides' copyrighted works upon paying Defendant on a per minute basis. *See*

Dkt. No. 1, Complaint, ¶¶ 27-61 . Neither Defendant XOD nor the individual viewing the pirated material pays anything to the actual copyright owner of the pirated materials.

Defendant had no authorization to duplicate or distribute the Plaintiff's copyrighted works after March 2007. *See* Dkt. No. 1, Complaint, ¶¶ 12-17. Defendant's unauthorized reproduction, public display, and distribution of Plaintiff's works obviously directly financially benefitted the Defendant. In addition, Defendant's use of Plaintifff's works also served as an inducement, attracting third party marketers (affiliates) to market Defendant's xondemand.com website. The increased traffic to Defendant's web site necessarily increases monies generated through the banners and pop up advertisements. *Decl. J. Tucker,* p 5, ¶ 20.

Defendant infringed Plaintiff's copyrights by reproducing and distributing the works through Defendant's websites without proper approval or authorization of Plaintiff. Defendant knew it did not have permission to exploit Plaintiff's works on the xondemand.com website and further knew or should have known its acts constituted copyright infringement, certainly after receiving written notice of termination of Defendant's rights to display the copyrighted works. Not only was the termination notice actually received by Defendant, but managers specifically acknowledged receipt of the notice to its employees. *See* Dkt. No. 30 *Declaration of Robert Hoover,* p 2, ¶¶ 2-5; *and* Dkt. No. 28 *Declaration of James Moran,* p 2-3, ¶¶ 11-12.

Defendant completely and blatantly disregarded the written notice terminating its rights. Defendant continued to display Plaintiff's copyrighted works after termination, earning money in viewer payments and advertising while paying the actual copyright owner nothing.

Quite simply, Defendant was and is unabashed and unrepentant in its theft of Fraserside's intellectual property, as it continues. Fully aware that their actions were illegal, fully informed of this lawsuit, served with the Complaint, warned about the consequences of default, Defendant terminated its relationship with its attorney in this action, and terminated its participation in this case. Defendant cannot complain when a default judgment is entered against it.

## B.   Statutory Damages Are Authorized

The Copyright Act provides for a plaintiff to recover, at its election, either (1) its actual damages and (to the extent not redundant) defendant's profits attributable to infringement, or (2) statutory damages.

If the works were registered with the U.S. Copyright Office prior to the commencement of the infringing activity, the copyright holder may elect statutory damages in the amount of $750.00 to $30,000.00 per work, increased to $150,000.00 in cases (such as this one) of willful infringement. 17 U.S.C. § 504(c).

Plaintiff registered the Works prior to the commencement of the infringing activity complained of herein. The value of Plaintiff's content, the damage caused by Defendants' unauthorized reproduction and distribution to hundreds of thousands of potential consumers, and the willfulness of Defendant's' infringing actions, warrant a sizeable award.

Either basis supports the amount Plaintiff Fraserside seeks in this motion. For the sake of simplicity, Fraserside primarily couches its request in statutory damage terms as set forth further below and seeks award of the domains used to infringe Plaintiff's copyrighted works.

Because actual damages are often hard to prove, statutory damages have been authorized to make such proof unnecessary. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Where timely registered works are infringed, as

occurred here, the Copyright Act authorizes statutory damages.  17 U.S.C. §504(c).  Where, as here, infringement is "willful," the amount may be as high as $150,000 for each infringed work.  *Id.*  Congress increased the maximum from $100,000 to $150,000 because it found large awards to be necessary and desirable to deter the great temptation to infringement posed by modern computer technology.  H.R. Rep. No. 106-216 (1999), pp.6-7.  The critical purpose of deterring similar misconduct permits a maximum per work award for willful infringement, even where the infringement caused little to no damage.  *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (collecting authority and sustaining maximum awards despite no proof of actual damages); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 234 (1952) (for willful infringement a maximum award is permissible "even for uninjurious and unprofitable invasions").

Plaintiff Fraserside has been damaged by Defendant's conduct, continues to be damaged by such conduct, and has no adequate remedy at law to compensate for all of the possible damages stemming from the Defendant's conduct.

Pursuant to 17 U.S.C § 504(c), Plaintiff elects the right to recover statutory damages.

### C.    **Plaintiff's Copyrighted Works Are Valuable**

Fraserside is the rightful trademark, copyright and intellectual property owner and/or successor in interest of the United States trademarks, copyrights, and intellectual property that is the basis for this action.  The parent company Private Media Group Inc., a Nevada company (PRVT on NASDAQ), is one of the world's leading producers of high quality brand driven adult motion picture films.  Fraserside, commonly and commercially known as "Private", has been producing legal adult entertainment since 1968, from print magazines and movie reels to VHS to DVD to online digital download and streaming.  *Decl. J. Tucker,* p 2, ¶ 7.

---

**8**

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

Fraserside's' highly sought after intellectual property is distributed on a wide range of platforms including mobile handsets via 104 network operators in 45 countries, digital TV via 38 platforms in 24 countries, broadband Internet, television broadcasting including its own South American cable channel in a venture with world famous Playboy™ and sold on DVD's, on demand and through subscription based web properties. *Decl. J. Tucker,* p 3, ¶ 10.

Fraserside has protected its trade names such as PRIVATE, PRIVATE GOLD, PIRATE and THE PRIVATE LIFE OF through United States trademark and service mark registrations and its films through United States copyright registration. Beginning in 1975, Fraserside further protected its intellectual property through registration in more than 25 countries including Australia, Brazil, Canada, Chile, Denmark, Europe, France, Germany, Hong Kong, India, Italy, Japan, Mexico, Norway, New Zealand, Panama, Philippines, Poland, South Africa, Spain, Sweden, Switzerland, Taiwan, Thailand, United Kingdom, and Venezuela. *Decl. J. Tucker,* p 3, ¶ 11.

Plaintiff, directly or through its assigns are producers, distributors, and/or exclusive licensors of motion pictures in the United States.  Plaintiff through their assigns are engaged in the business of producing, distributing, and/or licensing to others, the rights to copy, distribute, transmit and exhibit copyrighted motion pictures and/or other audio visual works.  Plaintiffs' library has required the expenditure of significant amounts of time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition of their products. *Decl. J. Tucker,* p 3-4, ¶ 12.

Plaintiffs, either directly or through their affiliates or licensees, distribute their copyrighted works in various forms, without limitation, over the Internet, pay-per-view, video on demand, digital video discs (DVD's), and other formats, by selling

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

1  them directly or indirectly to the home viewing market or licensing others to do so.

2  Plaintiffs also distribute their copyrighted works, without limitation, through Internet

3  streaming and download services.  *Decl. J. Tucker,* p 4, ¶ 13.

4      Plaintiffs have registered with the United States Copyright Office their

5  copyrighted works.  Plaintiffs have taken industry standard steps to identify their

6  products, including placing recorded warnings at the beginning and end of video

7  productions that appear whenever those videos are played.  *Decl. J. Tucker,* p 4, ¶ 14.

8      Plaintiff, by and through its parent and subsidiary entities, has been engaged in

9  the production, distribution and marketing of adult themed entertainment for over 40

10  years.  To illustrate the true longevity of Plaintiff and Plaintiff's products, when

11  Plaintiff began production, NASA had not yet achieved its goal of landing a man on

12  the moon, a first class postage stamp cost a nickel, gasoline contained lead and sold

13  for $0.33 a gallon, and the sale of erotic materials was legally risky in the United

14  States.  In the decades since then, the US Supreme Court recognized the First

15  Amendment rights in erotic commercial enterprise, the Cold War ended and the space

16  race went commercial.  Fraserside, by and through its parent and subsidiary entities,

17  continued to produce, market and distribute high quality adult entertainment, steadily

18  building a worldwide reputation in its industry, requiring millions of dollars

19  investment.

20      Fraserside, more commonly known as Private, is one of the oldest and most

21  recognized high quality producers of adult erotica.  It is considered the largest

22  European distributor of adult material in Europe.  *Decl. J. Tucker,* p 2-3, ¶ 8.  The

23  branding strength of the Private name is partially due to   its longevity and partially

24  due to the consistently high quality content it produces.  Consumers of adult erotica

25  know and seek out the Private label because it symbolizes quality.

26

Although the technology has changed since the 1960's, Plaintiff has always used high-quality equipment, including state of the art cameras, lighting, editing and reproduction equipment. Plaintiff employs experienced writers, directors, cinematographers, photographers and editors and films in exotic locations. Plaintiff has grown to a multinational, publicly traded and socially responsible company that produces high-quality product under premium brands. Simply put, Plaintiff's experience in this industry, persistent pursuit of quality and financial commitment behind Plaintiff's production, distribution and marketing result in a product that is superior to the content of its competitors and recognized by relevant consumers. *Decl. J. Tucker,* p 3, ¶ 9.

Since the advent of digital technology, video production now only requires an inexpensive hand held camera and a cheap laptop. The erotic adult market has been flooded with low quality, easy-to-produce amateur footage. Plaintiff distinguishes itself with its exotic shoot locations, scripting, set building, editing, and professional appearance of its product. Plaintiff protects its image as a premium brand in order to maintain the value of its products. *Decl. J. Tucker,* p 3, ¶ 9.

### D.   The Infringing Acts Harmed the Value of Plaintiff's Works

Plaintiff's, by and through its parent and parents subsidiaries, ability to sell and market its products, including DVDs, internet website memberships, internet website pay-per-views, hotel room pay-per-views, cable television licensing, and other licensing is directly dependent upon its ability to control the distribution of its works. When thieves such as Defendant make Plaintiff's valuable copyrighted works available outside of Plaintiff's control, that diminishes the value of the huge investment in copyrighted works made by Plaintiff.

In *Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000), plaintiff magazine publisher sued a website for publishing

its photographs on the Internet.   Evaluating damages the Court wrote, "While it
would be difficult to quantify Perfect 10's damages resulting from the infringement, it
is clear that Perfect 10 has been severely damaged.  The photographs have been
distributed worldwide, in a form that is easy to download and easy to copy.  A
virtually unlimited number of copies can be made of the copyrighted photographs, as
a result of [defendant's] infringement." *Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564
at 11.  The Court went on to award the maximum statutory award for willful
infringement ($100,000 per work at the time) for each infringed photograph.  This
$100,000 per photograph certainly demonstrates a legal basis for Fraserside claiming
that much per video, if notmore.  Defendant's websites are among the largest, by
traffic volume, in the world and reach millions of potential consumers.

The infringement of Defendant is for a commercial purpose, and Defendant's
websites reach millions of potential consumers.  Each potential consumer that is able
to obtain Plaintiff's valuable work with no benefit to Plaintiff and at a significantly
reduced cost then when offered by Plaintiff.  Defendant's actions have caused
immeasurable future damage by conditioning potential consumers to expect
Plaintiff's valuable quality products for nothing, thereby making it difficult if not
impossible to turn those potential consumers into actual customers.

## E.     The Facts and Law Support A Maximum Statutory Award

The infringements here were willful and malicious.  Defendant knew, or should
have known, that their conduct was unlawful, and acted without the slightest pretense
of a justification.  *See* Dkt. No. 30 *Declaration of Robert Hoover,* p 2, ¶¶ 2-5; Dkt.
No. 28 *Declaration of James Moran,* p 2-3, ¶¶ 11-12; and Dkt. No. 31 *Declaration of
Sean Holland.*

Defendant's objective was to steal Fraserside's property for financial gain.
There is no other plausible objective.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

The Defendant's illegal actions were not a momentary lapse, but a sustained commercial enterprise. Defendants were put on notice that they were no longer permitted to display Plaintiff's copyrighted works, yet continued to do so for *three years* in violations of the termination notice. In addition, Defendant engaged in the exact same conduct with another company the originally licensed copyrighted works to Defendant. *See* Dkt. No. 31 *Declaration of Sean Holland.* To deter others from yielding to the same temptation, a large award is appropriate. *Yurman*, 262 F.3d at 113-114.

Defendants willfully infringed Fraserside's works at least thirty (30) times. The sheer volume of infringements indicates the willfulness of Defendant's actions.

On a motion for default judgment, a district court awarded a maximum statutory award of $150,000 each for infringements of *The Last Samurai* and *Mystic River*, when a member of the Academy of Motion Picture Arts and Sciences who had been provided with a screener copy of the movies allowed the movies to be duplicated and distributed via the Internet. *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004). Similarly, in *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), cert denied, 534 U.S. 1127 (2002), the Ninth Circuit affirmed an award of approximately $72,000 per infringement of several half-hour television shows.

The popularity and economic value of adult content cannot be denied. Prior federal court decisions have recognized the high economic value of erotic material. Where infringement was found to be willful a court awarded $100,000 (the maximum award at the time) per adult photograph. *Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11.

Statutory damages serve both compensatory and punitive purposes, and thus may be appropriate "whether or not there is adequate evidence of the actual damages

suffered by plaintiff or of the profits reaped by defendant" in order to effectuate the
statutory policy of discouraging infringement.   *Los Angeles News Serv. v. Reuters
Television Int'l, Ltd.,* 149 F.3d 987, 996 (9th Cir. 1998).

### F.   Increased Damages for Willfulness

"In a case where the copyright owner sustains the burden of proving, and the
court finds, that infringement was committed willfully, the court in its discretion may
increase the award of statutory damages to a sum of not more than $150,000." 17
U.S.C. § 504(c)(2).  Defendants knew or should that known that their acts constituted
copyright infringement.  Defendants knew that they did not have Fraserside's
permission to reproduce and distribute the Works for their own commercial gain and
could only remain  unaware of the infringing nature of their actions by engaging in
willful blindness.

The "statutory rule, formulated after long experience, not merely compels
restitution of profit and reparation for injury but also is designed to discourage
wrongful conduct."  *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228,
233, 97 L. Ed. 276, 73 S.Ct. 222 (1952).

It is appropriate that the Court use opportunities such as this to send a message
of deterrence to would be infringers that, "it costs less to obey the copyright laws than
to disobey them."  *International Korwin Corp. v. Kowalczyk,* 665 F. Supp. 652, 659
(D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987).  The District Court in
*Korwin* held that, "[t]o determine the amount of statutory damages the court should
primarily focus upon two factors:  the willfulness of the defendant's conduct, and the
deterrent value of the sanction imposed," pointing out that "courts have repeatedly
emphasized that defendants must not be able to sneer in the face of copyright owners
and copyright laws." Id.  See also, *Hickory Grove Music v. Andrews,* 749 F. Supp.

1001, 1003 (D. Mont. 1990); *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989). Here, the Defendants are not only sneering in the face of the copyright owner, but sneering at the Court, flatly refusing to participate in the litigation after losing its motion to dismiss and for summary judgment. Only a very large award would have any deterrent effect.

Plaintiff alleged in its Complaint that Defendants acted willfully. *See* Dkt. No. 1, Complaint, ¶ 166 . A Defendant's default with respect to a complaint that pleads willfulness, as here, establishes willful copyright infringement. *See, Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696, 702 (9th Cir. 2008) (holding that, as a result of default, "all factual allegations in the complaint are deemed true, including the allegation of (defendant's) willful infringement of (plaintiff's) trademarks").

Willfulness can also be inferred from a Defendant's failure to defend. *See, Tiffany* Inc. *v. Luban,* 282 F.Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, the (defaulting party's) infringement is deemed willful."); *Fallaci v. New Gazette Literary Corp.*, 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983) ("[W]e draw a further inference of willfulness from the defendant's failure to appear and defend this action, especially in light of plaintiff's allegation of willfulness and demand for "increased statutory damages applicable to willful infringers.")

Most importantly, considering that Defendants were provided written notice of the termination of the license to display Fraserside's copyrighted works, the Defendant's infringing behavior must be deemed to be intentional, wanton and willful. It is willful copyright infringement for a defendant to continue to display, publish, distribute, or utilize copyrighted works after receipt of license termination. *Peer International Corporation v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-336 (1990).

Therefore, it is proper to award maximum damages for the intentional infringement of Fraserside's copyrighted motion pictures.  Defendant's actions supporting maximum statutory award are easily summarized:

- Defendant continued to display thirty works for more than three (3) years after notice of termination.  *See* Dkt. No. 1, Complaint, ¶¶ 27-61.

- Defendant has established a business model of entering into license agreements, allowing them to terminate, ignoring termination and cease. and desist notices, and continue to profit from display after terminations.  *See* Dkt. No. 1, Complaint, ¶¶ 10-17, 27-61;  *See* Dkt. No. 31, *Decl. S. Holland.*

- Defendant is on first page of search results using world's largest search engine, Google (search results dependent upon popularity of the site).  *See Decl. J. Tucker,* p 4, ¶ 16, Ex. B.

- Defendant is on first page of search results using Yahoo! search engine (search results dependent upon popularity of the site).  *See Decl. J. Tucker,* p 5, ¶ 17, Ex. C.

- Defendant is on first page of search results using AOL search engine (search results dependent upon popularity of the site).  *See Decl. J. Tucker,* p 5, ¶ 18, Ex. D.

- Defendant was served with this lawsuit. *See* Dkt. No. 9.

- Defendant's motion to dismiss included false statement that Defendant never received termination notice and statement that all of Plaintiff's works had been removed.  *See* Dkt. No. 30 *Declaration of Robert Hoover,* p 2, ¶¶ 2-5; and Dkt. No. 17 *Declaration of Frank Ryan.*

- Defendant, in fact, was still using Plaintiff's material after its motion to dismiss *Decl. of J. Tucker*, p 6, ¶¶ 21-23, Exs. E, F, G, and I.

16

- Defendant negotiated terms of settlement to cancel trial date in this matter.
- Defendant then terminated its relationship with its attorney in this matter and completely withdrew its participation in the litigation.
- <u>Even today, Defendant lists Plaintiff as a studio displayed on its web sites and are infringing Plaintiff's intellectual property rights.</u> *Decl. of J. Tucker*, p 6, ¶ 23, Ex. I.

At the maximum of $150,000 per work when the Court finds infringement willful, statutory damages for the offense of Copyright Infringement, not including the claims of Contributory and Vicarious Copyright Infringement, Trademark Infringement and  Dilution of Trademark, of $4,500,000 are appropriate as well as award of the domain names www.xondemand.com to the Plaintiff.  Taking into account the potential actual damages number noted above, this statutory damages award and award of domain names is in line with actual damages.

## G.   Plaintiff Is Entitled to Injunctive Relief and Attorney's Fees

Fraserside seeks an injunction against future similar misconduct by Defendant. 17 U.S.C. § 502(a) makes express that the Court may issue "final injunctions on such terms as it may deem just to prevent or restrain infringement of a copyright." Thus, such relief is authorized here by Defendants' conduct.

Finally, Plaintiff Fraserside also requests attorney's fees in the amount of $51,230. 17 U.S.C. § 505 provides that the Court may "award a reasonable attorney's fee to the prevailing party as part of the costs." *See also*, *Warner Bros. Ent, Inc. v. Duhy*, 2009 U.S. Dist. LEXIS 123332, 8-9 (C.D. Cal. Nov. 30, 2009), citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999) (finding a district court's award of attorneys' fees under Section 505 to be "justified based on the court's finding

of willfulness and [ ] in line with the statutory goal of deterrence")  The sum of $51,230 is reasonable.

## III.   Discussion of Eitel Factors

The Court, in considering whether to grant a Motion for Default Judgment, may consider the following factors: (1) the possibility of prejudice to the Plaintiff; (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the Complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying  the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir. 1986).  As illustrated below, all seven of these factors  favor the entry of a default judgment.

### A.   Possibility of Prejudice to Plaintiff

Fraserside will be prejudiced if default judgment is not entered.  Fraserside served process on Defendants pursuant to Fed. R. Civ. P. 4.  Defendant specifically acknowledged and stipulated to proper service. *See* Dkt. No. 9.  Although service was made upon Defendant and Defendant acknowledged the suit, Defendant has chosen to ignore the authority of this Court.  Defendant refused to finalize settlement documents, terminated its attorney, and thereafter completely ignored the Court and the litigation.  If Plaintiff's Application for Default Judgment is not granted, it "will likely be without recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

Moreover, due to the fact that Plaintiff has stated a valid copyright claim, Plaintiff "undeniably would be prejudiced absent an entry of permanent injunctive relief [by] default judgment." *PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.,* 510

F. Supp.2d 1110, 1116 (S.D. Fla. 2007). As such, Plaintiff will be sufficiently prejudiced to warrant the entry of default judgment.

Additionally, absent a default judgment awarding damages and the domain names and enjoining Defendants from engaging in similar behavior, there would be little from stopping these Defendants (and many other persons with similar inclinations around the world) from merely engaging in this behavior again.

## B.   The Merits of Fraserside's Substantive Claim and the Sufficiency of the Complaint

Factors two and three of the *Eitel* test require an analysis of Plaintiff's claims and the sufficiency of the Complaint. Plaintiff has asserted a prima facie claim for copyright infringement. Specifically, Plaintiff has alleged that a) it owns and has registered the copyright in the Works and b) the Defendants made unauthorized reproductions of those works and distributed them without Plaintiff's authorization. These allegations state a valid claim for copyright infringement.

## C.   The Amount of Money At Stake

As shown above, actual damages of over $4,000,000 or statutory damages of $4,500,000 are appropriate for (at a statutory maximum of $150,000 per infringement) for Defendants' willful infringement. The amount at stake is large, but the Defendant is a commercial venture that operates one of the busiest online commercial properties in the world. Only a large award will serve to deter these arrogant Defendants from future illegal action

## D.   The Remaining Factors

Factors five, six, and seven have also been satisfied. There can be little dispute as to the material facts. Plaintiff documented thirty infringements of its copyrighted works on the Defendant's websites. Plaintiff has demonstrated that it owns the copyrights for these works, that registration occurred before the infringing activity,

1  that Defendant had no authority to display Plaintiff's copyrighted works, and that
2  Defendant was actually made aware of the termination of the license.

3       There is no evidence that there is a dispute concerning material facts or that
4  default was due to excusable neglect.

5       With regard to factor seven, although "[c]ases should be decided upon their
6  merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, the mere existence of
7  Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal.*
8  *Security Cans,* 238 F.Supp. at 1777. Moreover, Defendants' complete withdrawal
9  from the litigation, resulting in the Court striking its Answer, "makes a decision on
10 the merits impractical, if not impossible." *Id.*

11 **IV.   CONCLUSION**

12      The Court should find in favor of Plaintiff's causes of action for Direct
13 Copyright Infringement, Contributory Copyright Infringement, Vicarious Copyright
14 Infringement, Trademark Infringement, Vicarious Trademark Infringement,
15 Contributory Trademark Infringement, and Trademark Dilution.

16      For the reasons demonstrated above, and based on the supporting evidence,
17 Plaintiff Fraserside requests that a default judgment be entered against Defendants as
18 follows:

19      a.    The sum of  $4,500,000 in statutory damages on the cause of
20 action for Copyright Infringement, and an award of the domain names for the
21 remaining causes of action, and

22      b.    Awarding Plaintiff it's attorney's fees of $51,230 and costs of suit
23 ($350 filing fee and service costs of $200, including foreign service and location of
24 registered agent) for a total of $51,730.

25

26

---
20

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT

1          c.       Permanent injunctive relief enjoining Defendants and their

2 respective agents, servants, and employees, and any other persons or entities acting

3 on their behalf from infringing upon any of the Plaintiff's copyrighted works.

4          d.       Injunctive relief awarding the transfer of the xondemand.com and

5 domain name.

6          e.       Such other relief as the Court deems just and proper.

7

8 Dated: October 17, 2011                Respectfully Submitted,

9

10                             SPENCER D. FREEMAN
                            FREEMAN LAW FIRM, INC.

11

12                             By:    /s/ Spencer D. Freeman___

13                                    Spencer D. Freeman

14                             GREEN & GREEN

15

16                             By: s/ Phil Green___
                            Phil Green

17

18                             Counsel for Plaintiff Fraserside

19

20

21

22

23

24

25

26

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT