Chad Belville IA Bar 015731
304 East Beth Drive
Phoenix, AZ 85042
602-904-5485
FAX 602-297-6953
cbelville@azbar.org
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF IOWA

CENTRAL DIVISION

| | | |
|---|---|---|
| FRASERSIDE IP LLC, | ) | |
| An Iowa Limited Liability Company | ) | |
| | ) | No. 11-cv-03040-MWB |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Igor Kovalchuk, dba DrTuber.com and | ) | |
| www.drtuber.com and John Does 1 - 100 and | ) | |
| John Doe Companies 1 - 100 | ) | |
| | ) | |

**PLAINTIFF'S RESISTANCE TO DEFENDANT IGOR KOVALCHUK'S
MOTION TO DISMISS**
_____

COMES NOW, Plaintiff Fraserside IP LLC, by and through its counsel, Chad Belville,

and RESISTS the Motion to Dismiss filed by Defendant Igor Kovalchuk. In support of it

Resistance to Motion, Plaintiff provides the attached Brief and Attachments.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. 3

Statement of Facts ........................................................................................... 6

   I.   Standard for Deciding a Motion to Dismiss ...................................................... 7

   II.  Plaintiff Is the Proper Defendant According to the Amended Complaint, and the Court

       Must Deny His Motion to Dismiss on This Basis............................................... 7

   III.   Defendant Was Properly Served Under British Virgin Island Rules ........................... 10

   IV.   Plaintiff Resists Defendant's Motion to Dismiss for Lack of Personal Jurisdiction...... 11

     A.   The Standard for Granting a Motion to Dismiss for Lack of Personal Jurisdiction....... 11

     B.   The Standard for Finding Personal Jurisdiction Over a Defendant ............................. 12

     C.   Defendant's Internet Activities Establish Specific Personal Jurisdiction ..................... 13

   V.   Plaintiff is the Proper Assignee of all Rights in and to the Copyrighted and

       Trademarked Products and The Right to Sue for Accrued Infringement, and Thus Has

       Standing to Sue ........................................................................................ 28

   CONCLUSION............................................................................................ 31

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) .............................................................11

*Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ...............................16, 20

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)...................11

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780-781, 104 S.Ct. 1473, 1481-1482 (1984).................25

**Cases**

*Abkco Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991) ...................28, 29

*AmerUs Group Co. v. Ameris Bancorp*, 2006 WL 1452808 (S.D. Iowa 2006)...........................20

*Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002) ......................................................14, 22

*Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989) .......................22

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) ..............19

*Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007) ..............................................12

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir.1997), rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) ......................................17, 18

*CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011) .. 15, 16, 17, 18, 19, 20, 22

*Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) 10, 11, 20, 21, 22

*Dlorah, Inc. v. Nau Holdings, LLC*, CIV. 08-5091RHB, 2009 WL 1107533 (D.S.D. 2009)......................8

*Dryspace, Inc. v. Crawlspace Concepts, L.L.C.*, 2011 WL 1113585 (N.D. Iowa 2011) ...........................20

*Express Media Group, LLC v. Express Corp.*, C 06-03504 WHA, 2007 WL 1394163 (N.D. Cal. 2007) ...9

*Faiveley Transport USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211 (S.D. N.Y. 2010)...............................7

*Getty Images (US) Inc. v. Advernet, Inc.*, --- F.Supp.2d ----, 2011 WL 2732202 (S.D.N.Y. 2011) ...........28

*Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986)............................22

*Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) ........................................................11

*Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008) ................................................................29

*International Society for Krishna Consciousness of Western Penn., Inc. v. Stadium Authority of the City of Pittsburgh*, 479 F. Supp. 792 , 797 (W.D. Pa. 1979) ............................................................................29

*Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003).......................................................................7, 8

*Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003) ............................ 12, 13, 22, 23, 24, 25, 26, 27

*Lindgren v. GDT, LLC*, 312 F.Supp.2d 1125 (S.D. Iowa 2004) ..........................................................23, 24

*Lundell v. Massey-Ferguson Services N. V.*, 277 F.Supp. 940 (D.C. Iowa 1967) ........................................6

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002) ...............................13, 14, 22

*Nordica S.p.A. v. Icon Health & Fitness, Inc.*, 06-CV-451-PB, 2009 WL 2462570 (D.N.H. 2009)............8

*Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011) ........................................................11

*Parents League for Effective Autism Services v. Jones-Kelley*, 565 F.Supp.2d 895 (S.D. Ohio 2008)........7

*Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.1978) ..............................................................7

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005).................................................29

*Specht v. Google, Inc.*, 660 F.Supp.2d 858 (N.D. Ill. 2009) .....................................................................29

*Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008)...............................................................................11

*Stephens v. Associated Dry Goods Corp.*, 805 F.2d 812, 814 (8th Cir.1986)...............................................6

*Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999) ...................................................28

*Viasystems, Inc. v. EBM-PAPST St. Georgen GmbH & Co.*, 2010 U.S. Dist. LEXIS 57871 (E.D. Miss. 2010). ......................................................................................................................................................20

*Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)...........................................29

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)..................12, 13, 14, 15

## Statutes

15 U.S.C. § 1125(d)(2) ......................................................................................................... 8

## Rules

British Virgin Islands Civil Procedure Rules, Rule 5.13 ............................................ 10

Iowa R. Civ. P. 1.306 ......................................................................................................... 11

## Other Authorities

Gilbert Kodilinye and Vanessa Kodilinye, *Commonwealth Caribbean Civil Procedure* (Commonwealth Caribbean Law) (3d Edition, 2008) ...................................................... 10

Greg Johnson, *The Costly Game for Net Names,* L.A. Times, Apr. 10, 2000 .............................................. 8

Hague Convention, Article 19 ........................................................................................... 9

http://www.icann.org/en/registrars/ ........................................................................... 8, 9

Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03 .................................................... 28

Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41 (2000)....................................................................................................... 12

## Statement of Facts

Plaintiff Fraserside IP LLC is the rightful owner of copyrights and trademarks in high quality brand driven adult motion picture films. Plaintiff, as successor in interest to sister and parent organizations, is engaged in the business of producing, distributing, and/or licensing to others the rights to copy, distribute, transmit and exhibit those copyrighted films and/or other audio visual works. Plaintiff and/or its parent and sister companies expend significant amounts of time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition of their products. Amended Complaint, ¶ 5. Plaintiff is also the holder of certain Trademarks, including a depiction of two female silhouettes, the Private and Private Gold Labels and "The Private Life Of" that have been actively promoted and marketed. As a result, the purchasing public has come to know, rely upon and recognize these marks as an international brand of high quality entertainment. Amended Complaint, ¶ 5-15.

Plaintiff, either directly or through affiliates or licensees, distributes its copyrighted works in various forms, without limitation, over the Internet, pay-per-view, video on demand, DVD's, and other formats, by selling them directly or indirectly to the home viewing market or licensing others to do so and through Internet streaming and download services. Amended Complaint, ¶ 5, p. 5.

The Amended Complaint, in paragraph 2, alleges that Igor Kovalchuk owns and operates www.drtuber.com. Defendant's website offers adult entertainment to users all over the world. Alexa, a website rating service, ranks DrTuber.com as the #504 most visited website in the United States, just behind USAToday.com at #454. Amended Complaint ¶ 22, and Attachment 2. United States residents provide the greatest traffic to the website, with 17.6% of visitors to

DrTuber.com being U.S. residents, with the next largest audience in Germany at 7.6%. (Exhibit A, Alexa regional audience statistics).

Defendant's website is offering, displaying and distributing Plaintiff's films to its Internet Users. Defendant knows, or has reason to know, that there is no proper license or authority to display and distribute Plaintiff's films on Defendant's website and no proper license or authority to obtain commercial financial gain from such display and distribution. Amended Complaint, ¶¶ 33-35. Nevertheless, Defendant is distributing, showing and receiving Plaintiff's films without proper license, and infringing on Plaintiff's copyright. *Id.*

**Standard for Deciding a Motion to Dismiss**

Motions to dismiss are sparingly granted and in passing on such a motion the court accepts well pleaded allegations of fact as true, in a light most favorable to the plaintiff. *Lundell v. Massey-Ferguson Services N. V.*, 277 F.Supp. 940 (D.C. Iowa 1967). The Court is "bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff." *Stephens v. Associated Dry Goods Corp.*, 805 F.2d 812, 814 (8th Cir.1986). If the Court follows these rules of law in this case, the Court must deny the Motions to Dismiss.

**Plaintiff Is the Proper Defendant According to the Amended Complaint, and the Court Must Deny His Motion to Dismiss on This Basis**

Defendant asserts that he is not the owner of the DrTuber.com website. To support this, he submits only his self-serving affidavit that says so. In a Motion to Dismiss, however, the Court must take the complaint as true. Here, the Amended Complaint alleges that Defendant is the owner of DrTuber.com. Accepting that as true, the Court must deny the Motion to Dismiss.

A federal district court is normally permitted to look only to the allegations on the face of the complaint when adjudicating a motion to dismiss. Therefore, the court generally cannot

consider affidavits and exhibits on a motion to dismiss. *Faiveley Transport USA, Inc. v. Wabtec Corp.*, 758 F. Supp. 2d 211 (S.D. N.Y. 2010).

"A motion to dismiss for failure to state a claim is granted where the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where **the face of the complaint** reveals that there is an insurmountable bar to relief." *Parents League for Effective Autism Services v. Jones-Kelley*, 565 F.Supp.2d 895 (S.D. Ohio 2008), citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.1978). Here, the face of the complaint states very clearly, with no contradictions, that Kovalchuk is the owner of DrTuber.com.

Defendant asserts that the fact that the website is registered to him is insufficient under the case law to show ownership. First, the Amended Complaint does not allege that as the basis for ownership, or as the sole basis, nor does it have to allege more at this stage of the proceedings.

In addition, there is case law providing that the registrant of the domain name (which is Defendant Igor Kovalchuk in this case) has a property right in the name. As the Ninth Circuit found in *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003), "[p]roperty is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition.'" Domain names and websites satisfy the criterion for whether a property right exists. There is interest capable of precise definition; it is capable of exclusive possession or control; and the putative owner must have established a legitimate claim to exclusivity. *Id*. The court in *Kremen v. Cohen* compared the domain name to a share of corporate stock or a plot of land, and found it satisfied the first criteria as it is a well-defined interest. The second criterion was satisfied, as "[o]wnership is exclusive in that the registrant alone makes that decision. Moreover, like other

forms of property, domain names are valued, bought and sold, often for millions of dollars, *see* Greg Johnson, *The Costly Game for Net Names,* L.A. Times, Apr. 10, 2000, at A1, and they are now even subject to in rem jurisdiction, *see* 15 U.S.C. § 1125(d)(2)." *Id.* The court last found that registrants have a legitimate claim to exclusivity. "Registering a domain name is like staking a claim to a plot of land at the title office. It informs others that the domain name is the registrant's and no one else's." *Id.*

The Internet Corporation for Assigned Names and Numbers ("ICANN"), the governing body for domain names on the Internet, also considers the registrant to be the responsible party regardless of who is actually using the domain name. According to ICANN "[i]f this happens…the Registered Name Holder could be accountable for wrongful use of the domain name by the third party. This will happen if the Registered Name Holder is provided with "reasonable evidence of actionable harm" from the third party's use of the domain name. In that situation the Registered Name Holder will "accept liability for harm caused by wrongful use of the Registered Name"…. *See* http://www.icann.org/en/registrars/ registrant-rights-responsibilities-en.htm.

Because the registration of the domain name gives Defendant rights that are in reality property rights, Defendant Kovalchuk simply cannot assert that he does not own DrTuber.com.

Further, the cases cited by Defendant do not support the proposition he asserts. In *Dlorah, Inc. v. Nau Holdings, LLC*, CIV. 08-5091RHB, 2009 WL 1107533 (D.S.D. 2009), the assertion that the defendant owned nau.com did not appear in plaintiff's complaint. Here, it does. In *Nordica S.p.A. v. Icon Health & Fitness, Inc.*, 06-CV-451-PB, 2009 WL 2462570 (D.N.H. 2009), the court was addressing a motion for summary judgment, where Plaintiff was required to establish the fact of ownership of the website. In this case, the court is addressing a motion to

dismiss where it must take as true the allegation that Defendant owns DrTuber.com. The court in *Express Media Group, LLC v. Express Corp.*, C 06-03504 WHA, 2007 WL 1394163 (N.D. Cal. 2007) was also dealing with a motion for summary judgment, and the action was for conversion of the domain name. The question there was whether the person who converted the domain name came by it legitimately. He was unable to show that he had, a crucial fact to avoiding the plaintiff's motion for summary judgment. The issues here are different, and the allegations that Defendant owns the domain name and website are sufficient to deny a motion to dismiss.

Because Plaintiff has raised the issue of ownership of the website by means of a motion to dismiss, the Court cannot consider Defendant's self-serving affidavit that he does not own DrTuber.com. In addition, because Defendant is a registrant of DrTuber.com, he has property rights in the domain name. The Court must take the allegation of Defendant's ownership as true, and must deny the motion to dismiss.

**Defendant Was Properly Served Under British Virgin Island Rules**

Defendant asserts that he was not properly served. As the attached affidavit demonstrates, Defendant was served at the address he himself listed in registering the DrTuber.com website: Blenheim Trust, RG Hodge Plaza, Wickhams Cay, Road Town, Tortola, Virgin Islands. (Exhibit H, DrTuber.com Whois report; Exhibit I, Affidavit re Service). Under Internet Corporation for Assigned Names and Numbers ("ICANN") policies, a registrant must provide "accurate and reliable contact details" and must "promptly correct and update them" during the registration term or risk losing the domain name. *See* http://www.icann.org/en/registrars/registrant-rights-responsibilities-en.htm. Thus, this information about the location of the Defendant is up to date.

Under the Hague Convention, service may be effected in accordance with the laws of the jurisdiction where service is being made. Hague Convention, Article 19. Under British Virgin

Islands Civil Procedure Rules, Rule 5.13,[1] a party may, instead of serving a summons personally, use an alternative method of service without court permission. Specifically, as relevant here, a party may serve the person at an address where the person is known to attend regularly. See Gilbert Kodilinye and Vanessa Kodilinye, *Commonwealth Caribbean Civil Procedure* (Commonwealth Caribbean Law) (3d Edition, 2008), p. 19.

Defendant has listed on the DrTuber.com website registration the address in Tortola, V.I. as the address for him as a registrant, as the place for administrative contact, as the same place for billing contact, and as the same place for technical contact. Since he is listed at that address for so many purposes related to an active, thriving website, then this is a place where he is known to attend regularly, in some form or other. Service was proper in this instance, and the Court should therefore deny Defendant's Motion to Dismiss.

**Plaintiff Resists Defendant's Motion to Dismiss for Lack of Personal Jurisdiction**

**The Standard for Granting a Motion to Dismiss for Lack of Personal Jurisdiction**

Plaintiff bears the ultimate burden of proof on the issue of personal jurisdiction over the Defendant. However, "jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). To defeat a motion to dismiss for lack of personal jurisdiction, Plaintiff here need only make a prima facie showing of jurisdiction. *Id.* "If the district court does not hold a hearing and instead relies on pleadings and affidavits, as it did here, the court must look at the facts in the light most favorable to the nonmoving party,… and

---

[1] British Virgin Islands are a member of the OECS which has subscribed to the Civil Procedure Rules for the OECS Supreme Court. Kodilinye, *Commonwealth Caribbean Civil Procedure, supra.*

resolve all factual conflicts in favor of that party." *Id.*; *See also, Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741 (8th Cir. 2011).

**The Standard for Finding Personal Jurisdiction Over a Defendant**

As Defendant notes, Iowa's long-arm statute extends personal jurisdiction over nonresidents to the fullest extent permissible under the Due Process Clause. See Iowa R. Civ. P. 1.306. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam). Therefore, this Court only needs to examine whether the exercise of personal jurisdiction over Defendant comports with due process. *Hicklin*, 959 F.2d at 739.

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)). General jurisdiction arises when a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business, and if so, the injury sued upon need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586.

"Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.*; *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Defendant in his Motion to Dismiss fails to distinguish between these different forms of jurisdiction and the different standards and proof required for each. Plaintiff sets forth the requirements for the finding of jurisdiction and asks that this Court exercise jurisdiction over Defendant.

**A. Defendant's Internet Activities Establish Specific Personal Jurisdiction**

"The continuous and illimitable presence of the internet has required fashioning special rules for applying the traditional due process test." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007). The "traditional territorial notions of personal jurisdiction, …have required re–examination in recent years in light of technological advances and the increasing globalization of the economy. Commercial uses of the Internet, in particular, have tested the limits of a territorial–based concept of jurisdiction." Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long–arm statutes and due process clause*, 81 A.L.R. 5th 41 (2000).

The Eighth Circuit Court of Appeals addressed the issue of whether a website may provide sufficient contacts to invoke jurisdiction in *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003). As the court noted there, a prima facie case of specific jurisdiction is established by showing that the Defendant has purposely directed its activities at Iowa residents, and that the claims in the suit either arise out of or relate to the defendant's activities. *Lakin*, 348 F.3d at 707. Discussing the unique aspects of basing jurisdiction on Internet activities, the court turned, as many other courts have, to *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997). Taking its cue from *Zippo*, the Eighth Circuit noted that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Lakin, supra* at 701, quoting *Zippo*. The *Zippo* court devised a "sliding scale" approach to determine the nature and quality of the Internet activity, stating:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. <u>If the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper</u>. At the opposite end are situations

where a defendant has simply posted information on an Internet [website] which is accessible to users in foreign jurisdictions. A passive [website] that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive [websites] where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [website].

*Zippo*, 952 F.Supp. at 1124.

In *Lakin,* the Eighth Circuit analyzed the sliding scale method outlined in *Zippo* and concluded that it was proper for use in cases where specific personal jurisdiction was alleged.[2] *See Lakin*, 348 F.3d at 711. Because the fact situation in *Lakin* concerned only general jurisdiction, the Eighth Circuit provided no further guidance for the application of the *Zippo* sliding scale. However, as *Zippo* taught, at the top of the scale is the situation where "the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet," in which case, personal jurisdiction is proper. *Zippo*, 952 F.Supp. at 1124. Under this analysis, the operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002).

The Sixth Circuit Court of Appeals provided an example of what type of website had the interactivity necessary for the exercise of specific jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc., supra.* As in this case, *Neogen* involved trademark infringement. The defendant company provided blood testing for newborns. The defendant accepted blood for testing and accepted payment from residents in Michigan. It packaged the results of the tests and made the results available over the Internet, providing passwords to Michigan residents. The court found

---

[2] Defendant ignores this holding of *Lakin*.

that establishment of a paid area accessible only to members is characteristic of a website with a high degree of interactivity. *See Neogen*, 282 F.3d at 890-91. The Court held that Neogen had presented a prima facie case that NGS transacted business in Michigan by showing the interactive nature of the website. "When Michigan residents purchase NGS's services, for example, NGS provides them with passwords to access their test results on the website from Michigan. The granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan." Thus, the court found it appropriate to exercise specific jurisdiction over the defendant, NGS.

Likewise, in *Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002), the Sixth Circuit court held that the defendants, by maintaining a website on which Ohio residents could register domain names and by allegedly accepting the business of Ohio residents, satisfied the purposeful-availment requirement and were subject to specific jurisdiction. There, the fact that the defendant regularly chose to do business with Ohio residents was sufficient. *Id.*

Here, Defendant's website is not a mere passive website such as those at the bottom of the Zippo sliding scale. The DrTuber.com website does much "more than make information available to those who are interested in it." *Zippo Mfg.*, 952 F.Supp. at 1124. The website falls on that end of the spectrum "where a defendant clearly does business over the Internet" by "enter[ing] into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet," and thus, specific personal jurisdiction is proper. *Id.*

On Defendant's website, users are encouraged not just to view the videos on the websites. They are encouraged to upload their own videos and "meet friends and watch their private

videos." (Exhibit B, DrTuber.com Sign Up Page). Further, whether a premium or a free member, a user has "24/7 customer support." *Id*.

Users also have the option of paying $29.95 per month (the amount clearly listed in U.S. Dollars) to buy a premium membership. (Exhibit C, Premium Membership sign up page). Premium users are able to get "crystal clear HD movies." They can not only view the videos posted, but have unlimited downloads of those videos. The user pays a monthly fee of $29.95, charged to his credit card every thirty days. (Exhibit D, Page 2, Premium Membership sign up page). With this premium membership, Defendant is clearly "enter[ing] into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet." *Zippo Mfg*., 952 F.Supp. at 1124.

The U.S. District Court for the Central District of California recently decided a case very similar to this one using the tests for specific jurisdiction developed by the Ninth Circuit Court of Appeals. In *CYBERsitter, LLC v. People's Republic of China*, 2011 WL 3322552 (C.D. Cal. 2011), Plaintiff was the developer of Internet parental control software. It alleged that Chinese companies had targeted Plaintiff by obtaining its code for the software and using it to develop their own software programs, and/or reproducing, adapting, and/or distributing Plaintiff's copyrighted work without authorization. As to jurisdiction, Plaintiff alleged that the companies knew that Plaintiff was a U.S. company and that the defendants' acts would cause injury in the U.S. and in California, the forum state. Plaintiff also claimed that the defendants made the infringing software program available for download to individuals in the United States and had made Plaintiff's code for the software publicly available on its servers. The Plaintiff alleged that a third defendant, who engaged in other activity in California, distributed computers with Plaintiff's software code in China.

The California court used the Ninth Circuit's three-part test to determine whether a district court can exercise specific personal jurisdiction over a nonresident defendant. First, the defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum. Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *CYBERsitter*, 2011 WL 3322552, 6.

The first test, whether there has been purposeful availment of the privilege of doing business in the forum, is the threshold test, of course. The Ninth Circuit evaluates this issue using a form of the "Calder-effects" test, taken from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Id. The test requires that defendant allegedly must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

The California district court found that the intentional act requirement was easily met as to all defendants. Courts "construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *CYBERsitter*, at 6. Any one of the alleged acts of theft, misappropriation, and subsequent distribution of Plaintiff's code were all actual, physical acts, even if done by computer.

Here, too, Plaintiff's allegations show that Defendant has knowingly allowed its users to upload Plaintiff's videos to Defendant's websites, stored them on the host computer and made

them available for download throughout the United States. Defendant clearly targets U.S. users. The website is in English. Its premium membership is offered in dollars.

Further evidence that U.S. citizens are specifically targeted is found in its Webmaster Sign up page. Defendant offers to pay $1.75 (in U.S. dollars) per 1,000 unique visitors from the USA to webmasters who act like salespeople on commission. Affiliate Webmasters build webpages with links back to DrTuber, and if a surfer follows that link to DrTuber, then DrTuber pays the webmaster. (Exhibit E, DrTuber.com webmaster program home page).

In addition, DrTuber.com's current Terms of Service page shows its intent to service United States citizens and comply with U.S. laws. It acknowledges "copyright and other intellectual property rights under United States…law."

The Complaint also makes allegations that connect Defendant to Iowa. In Paragraph 5, at pages 4-5, Plaintiff alleges that Plaintiff sold to Iowa residents over 400 of its videos by mail and 2000 by online downloads. Defendant's infringement affects Plaintiff's sales in Iowa by taking sales away from Plaintiff. Further, Plaintiff alleges that Defendant's website has numerous Iowa-based views per month, and that the amount will be determined during discovery. Amended Complaint ¶ 22.

Next, the *CYBERsitter* court looked at whether the activities of the defendants were expressly aimed at the forum state. The requirement of express aiming requires more than "'untargeted negligence' that merely happens to cause Plaintiff harm." *CYBERsitter* at 8. The court cited the Ninth Circuit's previous decision in *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir.1997), rev'd on other grounds, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998), and noted that "an allegation of a defendant's willful

copyright infringement against a plaintiff with knowledge of plaintiff's principal place of business satisfies the Calder effects test." *CYBERsitter,* citing *Columbia Pictures* at 289.

In *CYBERsitter*, the defendants argued, that no express aiming occurred because, even if Plaintiff's allegations were true, the defendants did nothing above and beyond willfully infringing Plaintiff's copyright with the knowledge that Plaintiff resided in California, and never distributed or marketed the allegedly infringing products in California. The court disagreed, pointing to the Ninth Circuit's decision in *Columbia Pictures* that an allegation of willful copyright infringement knowingly directed at a forum resident "alone" is sufficient to satisfy purposeful availment. *CYBERsitter* at 10, citing *Columbia Pictures*, 106 F.3d at 289. Thus, "[t]aking Plaintiff's allegations as true" the Court found that Plaintiff had stated a prima facie case showing that the defendants expressly aimed their conduct at Plaintiff. "Here, a software developer alleges that foreign software developers and computer manufacturers intentionally stole its copyrighted software—the very basis of its business—and conspired to distribute it to Chinese-speaking customers throughout China and the United States." This constituted intentional express aiming under the Calder test. *Id*. at 9. "When Defendants commit intentional copyright infringement with knowledge of plaintiff's residency, … they 'should reasonably anticipate being haled into court' in the forum in which Plaintiff resides, as the brunt of the injury takes place there." *Id*.

Here, too, the infringement of Plaintiff's videos was expressly aimed at harming Plaintiff in its business. Defendant permitted and encouraged the uploading of Plaintiff's videos to its website with the intent that they would be distributed to and viewed and downloaded by Defendant's Premium members – its paying users. The Defendant moderates, reviews and screens the videos before posting them on its website, so Defendant knew they were Plaintiff's

videos, and knew that Defendant had no license or authority to distribute the videos. Defendant then conspired to and did distribute and make the videos available to residents in the United States and Iowa. This is express aiming, and this court should so find.

The last element in the Ninth Circuit's purposeful availment test is the harm likely to be suffered in the forum state. To satisfy this element, "the 'brunt' of the harm need not be suffered in the forum state," but only "a jurisdictionally sufficient amount of harm." *CYBERsitter*, at 10. Further, Plaintiff satisfies this element if it alleges that defendant's intentional act has 'foreseeable effects' in the forum. *Id*. The *CYBERsitter* court quoted *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010): "In this case, it was foreseeable that [plaintiff] would be harmed by infringement of its copyright, including harm to its business reputation and goodwill, and decreased business and profits. It was also foreseeable that some of this harm would occur in the Forum, where [plaintiff] was known to reside." *Id*. The court held that plaintiff had met the third and last prong of the test, as it alleged that the misappropriation of Plaintiff's copyrighted material would cause harm to Plaintiff in California, and that all of the defendants knew Plaintiff was an American company and that their actions would cause injury to Plaintiff in California. The court thus denied the Motion to Dismiss.

This Court should do the same. It was imminently foreseeable to Defendant that Plaintiff would be injured by the unrecompensed offering of Plaintiff's videos on Defendant's website. Defendant knew that Plaintiff would lose profits by its acts, that Plaintiff was an American business and that it was located in Iowa. Thus, this Court should also find that Plaintiff has made a prima facie case showing that it has specific personal jurisdiction over the Defendant.

The cases that Defendant cites to support its motion are radically different factually, and thus don't apply here. In *AmerUs Group Co. v. Ameris Bancorp*, 2006 WL 1452808 (S.D. Iowa

2006), the defendant was a Georgia corporation with no business contacts in Iowa. Although it had a website, only persons already customers and who paid a monthly fee could use the Internet interactive services, and only persons who visited one of its local banks in Georgia, Florida, or Alabama could be a customer. Thus, a resident in Iowa could not do business with the company from Iowa. Here, on the other hand, Defendant is open to doing business with any and all residents of Iowa, who won't even have to leave the comfort of their homes to do so. Discovery will show that Defendant does indeed have customers in Iowa.

Defendant cites *Viasystems, Inc. v. EBM-PAPST St. Georgen GmbH & Co.*, 2010 U.S. Dist. LEXIS 57871 (E.D. Miss. 2010). There, the court found that no personal jurisdiction could be exercised because "the website did not allow visitors to make direct purchases." That case certainly does not apply here, where DrTuber.com allows the purchase of a premium membership for $29.95 by anyone with a credit card, including Iowa residents.

The other case Defendant cites, *Dryspace, Inc. v. Crawlspace Concepts, L.L.C.*, 2011 WL 1113585 (N.D. Iowa 2011) is likewise distinguishable since the defendant there never did any business with a resident of Iowa and its website was not of the interactive type found in this case.

Notably, Defendant fails to cite the Eighth Circuit Court of Appeals' decision in *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991). The case, though not involving Internet activity, demonstrates that the Eighth Circuit would likely follow the reasoning in *CYBERsitter* and find specific personal jurisdiction in this case. Like the California court, the Eighth Circuit there applied the *Calder* "effects" test, and adopted it as an additional test for specific jurisdiction. *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-1391 (8th Cir. 1991).

In *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, the Plaintiff, Dakota Industries, claimed trademark infringement by Dakota Sportswear. Sportswear had no offices, outlets, agents or employees in the forum state (South Dakota), and had never marketed or advertised in South Dakota, and never directly or indirectly shipped products into South Dakota. The evidence showed, however, that the end purchasers of Sportswear's clothing were located throughout the entire United States. Further, major chains carried Sportswear clothing, and thus, if the chains to which Sportswear sold had outlets in the forum state (South Dakota), Sportswear's clothes could be shipped there.

The Court cited Calder for the proposition that the defendant's lack of control over distribution of the product in the forum state would not bar jurisdiction when the plaintiff has alleged an intentional tort. *Id.*, citing *Calder* at 789-90, 104 S.Ct. at 1487. The evidence showed that there was some "passing off" (where the deceived customer buys the defendant's product believing it is the plaintiff's) of Sportswear's infringing clothing in South Dakota. This fact, along with the fact that Industries' principal place of business was in South Dakota, demonstrated that "Sportswear's actions were uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there, as required by *Calder*. Under these circumstances, Sportswear 'must reasonably anticipate being haled into court' in South Dakota." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d at 1391. The Court therefore held that Plaintiff had made a prima facie showing of personal jurisdiction, reversed the dismissal and remanded for further proceedings.

In *Dakota*, the Eighth Circuit also made special note of two Ninth Circuit Court of Appeals cases that held that jurisdiction may be proper when defendant's only contact with the forum state is the "purposeful direction" of a foreign act having effect in that state: *Brainerd v.*

*Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986). It is safe to presume that the court would have followed the analysis in *CYBERsitter* and came to the same conclusion: that exercising personal jurisdiction is proper.

The facts of this case, are comparable to those in *Dakota*, *CYBERsitter*, *Neogen* and *Bird v. Parsons*, where the courts found specific personal jurisdiction could be exercised over the defendants. Here, as in the Internet cases, Defendant maintains interactive websites where users in the U.S. pay a fee for Defendant to distribute Plaintiff's videos to them, causing injury to Plaintiff, an Iowa corporation. Further, Defendant is accepting the business of Iowa residents, offering Iowa residents the opportunity to become paying members and so view upgraded videos and download premium versions of Plaintiff's films, many involving the pirated videos copyrighted and owned by Plaintiff. Defendant accepts Iowans and Iowa entities into its Webmaster Program as affiliated salespeople. By these activities, Defendant has purposefully directed its activities at Iowa residents and purposefully availed itself of the privilege of doing business in Iowa as required for specific jurisdiction.

For the court to exercise specific jurisdiction, it must also find that the plaintiff's action arises out of or relates to the defendant's forum-related activities. *Lakin, supra*. Here, the activities of defendant – allowing Iowa residents to view the Plaintiff's pirated videos – is exactly what Plaintiff sues for in this action. Consequently, the elements of specific personal jurisdiction are met in this case, and the Court may exercise jurisdiction over Defendant. The court should therefore deny the Motion to Dismiss.

**D.      The Court May Exercise General Personal Jurisdiction Over Defendant**

Even if the Court finds no specific personal jurisdiction over Defendant exists, the facts support a finding of general jurisdiction.

In *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003), the court held the Zippo test insufficient by itself to determine the propriety of exercising general jurisdiction. *Id*. at 711-12. Although the court found that the *Zippo* test was the starting point for determining if a website created general jurisdiction for a defendant, the court directed that after looking at the nature and quality of a website (that is, applying the *Zippo* test), courts must then weigh the quantity of the defendant's contacts via its website. *Lakin*, 348 F.3d at 712. Thus, under *Lakin*, a defendant with a website that is interactive in nature, and with a quantity of contacts with the forum, may be subject to the exercise of general jurisdiction in the forum.

Addressing the issue of general jurisdiction, the Defendant compares the case before this court to *Lindgren v. GDT, LLC*, 312 F.Supp.2d 1125 (S.D. Iowa 2004). There the Iowa plaintiff sued a California company for trademark infringement. The defendant maintained a website and sold some of its infringing products to Iowa residents. The court found that Iowa did not have jurisdiction. The case does not apply here, however, because the court based its decision on factors not present in this case.

First, the court noted that defendant GDT's website consisted primarily of single point-of-sale transactions rather than continuous, long-term contracts. Visitors to the site, even purchasers, could establish an online account, but it entailed no continuing obligations. The *Lindgren* court contrasted this fact with the facts in *Lakin*, where the defendant maintained a sophisticated, interactive twenty-four hour Web site which allowed users to exchange information with the host computer, and establish accounts and apply online for loans. *Id*. at 1130.

The situation here is like that in *Lakin*, not *Lindgren*. Here, Defendant's website allows users to establish a recurring membership that does entail an ongoing commitment to a monthly fee. It also entitles the purchaser to ongoing communication with Defendant's host computer for the purposes of downloading and viewing videos, uploading videos and interacting with other members of the community ("meet friends") on a twenty-four hour basis. This is the type of systematic, continuous relationship found in *Lakin*, not the occasional sales found in *Lindgren*.

Further, the *Lindgren* court also found it significant that the sales were goods under the Uniform Commercial Code. Under the U.C.C., the sales to Iowa residents were not made to Iowa. Instead, they were "F.O.B. seller," so that the title passed to the Iowa buyer in California when defendant delivered the items to FedEx for shipment. Here, the user is streaming videos to his home computer in Iowa, and there is no "F.O.B." term in the contract, as nothing is shipped. Thus, this element for denying jurisdiction does not exist here.

The facts in the Eighth Circuit's decision in *Lakin* provide a closer comparison for the analysis of Defendant's contacts. In *Lakin*, the defendant, Prudential Savings, was located in Georgia. The Plaintiff sued in Missouri. The court found that although Prudential had no offices in Missouri, it did have a website and did have loans with Missouri residents. The court found that the website was sophisticated, provided interaction such that the user could exchange information with the host computer, allowed consumers to establish and access secure online accounts, calculate home mortgage rates and complete online applications for home equity loans and lines of credit. Thus, "[t]hrough its Web site Prudential Savings could have continuous, significant contacts with Missouri residents. In fact, because its site is available twenty-four hours a day, it is possible for Prudential Securities 'to have contacts with the [State of Missouri] that are 'continuous and systematic' to a degree that traditional foreign corporations can never

even approach.'" *Lakin,* 348 F.3d at 712. The court also found it notable that the financial interactions with users were not single point of sale transactions, but involved loans measured over years, meaning that the defendant created continuous long-term contacts with its users. *Id.* at 708.

Here, Defendant's website is highly interactive. It is a sophisticated website that provides interaction such that the user can exchange videos, by uploading their own, downloading those uploaded by others, and interacting with fellow users. They thus exchange information with the host computer just as in *Lakin.* Further, with the premium membership, users don't have one single point of sale transaction. Instead, they have ongoing and continuous obligations to defendant. Thus, like the defendant in *Lakin*, Defendant here has the quality and nature of contacts to subject it to general jurisdiction.

In addition, the relationship here between Defendant's website and its users is akin to a more traditional, and thus more familiar, contract – the magazine seller and its subscribers. Like the magazine subscriber, users receive the content right in their own state and their own home. The magazine seller sends it by mail, the website owner transmits it at the user's behest over the Internet. The Supreme Court has found the magazine subscription contract to be the basis for jurisdiction in a state where a corporation continuously had customers in the forum's market, and has held that under the circumstances, the defendant "must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *See e.g.*, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780-781, 104 S.Ct. 1473, 1481-1482 (1984). Likewise here, Defendant's continuous exploitation of the Iowa market would certainly make it reasonable to anticipate being haled into court here regarding the infringement of Plaintiff's copyrights and trademarks.

The next step in determining general jurisdiction is whether the defendant has the quantity of contacts necessary to allow the court to exercise general jurisdiction over defendant. *Lakin*, 348 F.3d at 712. The relevant inquiry regarding quantity of contacts is not whether the percentage of a company's contacts is substantial for that company; rather, the inquiry focuses on whether the company's contacts are substantial for the forum. *Lakin*, 348 F.3d at 709.

Here, as in *Lakin*, the quantity of contacts in Iowa – how many users, how many web visits, how many premium members and other information, is as yet unknown. This is not publicly available information. Thus, as in *Lakin*, (unless the court finds specific jurisdiction exists over Defendant) the Court must permit Plaintiff to undertake jurisdictional discovery.

**E.    The Court Should Permit Jurisdictional Discovery by Plaintiff**

The Court in *Lakin* also established when a Plaintiff should be permitted jurisdictional discovery if there is not sufficient evidence to determine the extent and nature of the Defendant's contacts with the forum state without it. *Lakin*, 348 F.3d at 712-713. If the record does show that asserting jurisdiction would be reasonable and would not offend notions of fair play and substantial justice (that is, it would comport with due process), then Plaintiff should be permitted discovery on such things as the number of times Iowa residents have accessed the websites, the number of Iowa residents that have signed on for premium services, and any other data showing interaction between Defendant's website and Iowa residents. *Lakin*, 348 F.3d at 712-714.

Here, it would comport with due process to exercise jurisdiction over Defendant. The attachments to the Complaint show that U.S. customers make up almost 18 percent of the Defendant's world-wide market. Since the U.S. population is only 4.5% of the world population, this means that the "company's contacts are substantial" for the U.S. forum. At this time, there is no publicly available evidence of the extent of Defendant's contacts specifically with Iowa.

In *Lakin*, the court found that the interest of the state in providing a forum was an element of finding due process. 348 F.3d at 713. Here, Plaintiff is an Iowa corporation whose trademarks are being infringed by Defendant. Thus, Iowa has a significant interest in providing a forum for redress of Plaintiff's rights. Further, Defendant has provided not a clue as to where in the United States it might be fair to sue him. Because nearly 18% of his business is from the U.S., it is fair to sue him somewhere in the United States. Because there are certain to be residents in Iowa who do business with Defendant's websites, and because Plaintiff, the corporation suffering the injury because of Defendant's websites, is located here, exercising personal jurisdiction in Iowa does comport with due process.

The *Lakin* court also considered the burden on the defendant to travel here. *Lakin*, 348 F.3d at 713. Again, however, Defendant has substantial business in the United States. For it to contend that even though a fifth of its websites' business is from the U.S., it may not be sued here does not show "fair play and substantial justice." Because the Defendant has contacts with Iowa, the burden is not overly heavy on Defendant and due process permits it to be called to defend the clams here.

Because the evidence on the record thus far shows it would be reasonable and would not offend notions of fair play and substantial justice, the Court "must" allow jurisdictional discovery to permit Plaintiff to discover information regarding Defendant's contacts with Iowa residents if the Court determines that the current record does not establish personal jurisdiction over Defendant.

**Plaintiff is the Proper Assignee of all Rights in and to the Copyrighted and Trademarked Products and The Right to Sue for Accrued Infringement, and Thus Has Standing to Sue**

Plaintiff alleged in its Complaint the ownership of the copyrights and trademarks at issue here, stating that "Fraserside IP LLC, an Iowa Limited Liability Company, (Plaintiff or Plaintiffs herein) is the rightful trademark, copyright, and intellectual property owner and/or successor in interest of the United States trademarks, copyrights, and intellectual property that is the basis for this action." Amended Complaint, ¶ 5. Defendant asserts that the assignment of "a bare right to sue is ineffectual." Plaintiff's ownership rights are not bare assignments of the right to sue but all rights and ownership of the copyrights and trademarks and all transfers have been or will be delivered to the respective copyright and trademark offices. The Assignment "sells, assigns, transfers and conveys to [Plaintiff] all of [the] right, title and interest to the Copyrights, together with the goodwill of the business associated with the Copyrights." In addition, the Assignor assigned to Plaintiff "the right to sue for and receive all damages accruing from past infringements of the Copyrights herein assigned." Plaintiff acquired its full rights through the Assignment of Copyright and Common Law Copyright Rights attached hereto as Exhibit F.

The generally accepted law is that an owner of an exclusive right in the copyrights is entitled to sue for an infringement of that right which was committed prior to the assignment of the copyright, provided that the document granting the copyright explicitly that it includes the causes of action with respect to that right, accrued prior to the grant. See *Abkco Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir.1991) ("Thus, a copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them."); *Two Pepper Music v. Rhino Records, Inc.*, 173 F.3d 846 (2d Cir. 1999)("Where the assignment of an exclusive right under a copyright expressly includes the right to prosecute accrued claims for infringement, that right passes to the

assignee."); *Getty Images (US) Inc. v. Advernet, Inc.*, --- F.Supp.2d ----, 2011 WL 2732202

(S.D.N.Y. 2011); see also Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.03.

The cases cited by Defendant agree. For instance, the Ninth Circuit in *Silvers v. Sony*

*Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) acknowledged and agreed with the

holding in *ABKCO Music, Inc. v. Harrisongs Music, Ltd., supra*. Thus, the law provides that

because Plaintiff has both the current ownership of the copyrights and the right to sue for past

infringement, it has standing in this case. The court should thus deny the Motion to Dismiss.

The same is true with respect to Plaintiff's trademark infringement claims. Plaintiff is the

assignee of the rights to the trademarks, and to the business associated with it, as cases cited by

Defendant require. See *International Society for Krishna Consciousness of Western Penn., Inc. v.*

*Stadium Authority of the City of Pittsburgh*, 479 F. Supp. 792 , 797 (W.D. Pa. 1979). *See also*,

*Specht v. Google, Inc.*, 660 F.Supp.2d 858 (N.D. Ill. 2009). Plaintiff attaches the assignment as

Exhibit G.

Plaintiff has standing to assert both the copyright and trademark infringement claims.[3]

---

[3] Defendant also states in its factual allegations that Fraserside Holdings, Plaintiff's sister corporation, has asserted rights in some of the same property in lawsuits it has filed. Further, the Defendant's statement of facts alludes to a Nevada court order restraining Private Media, Fraserside's parent company, and its subsidiaries not to dispose of assets except in the ordinary course of business. Even assuming all this were true (it is not, as shown below), Defendants have no standing to assert any rights as a result of the foregoing. A party "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008). Thus, Defendants cannot be heard to complain about the alleged violation of the court order, or of the receiver's alleged lack of knowledge of the transfer of the copyrights and trademarks or alleged lack of knowledge of this case.

Defendants are wrong in their assumption that the transfers of copyrights and trademarks to Fraserside IP LLC were in contravention of the Court's order. No assets were disposed of and the actions were within the ordinary course of business. No director opposed the creation of Fraserside IP LLC or the transfer of copyrights and trademarks to the Iowa company. As the attached affidavits demonstrate, Fraserside IP LLC was established, and the copyrights and trademarks were transferred to it without objection from any of the officers of Private Media Group Inc. and its associated companies. Exhibits J-N, Declaration of Berth Milton, Chairman & CEO, Director; Declaration of Johan Gillborg, CFO; Declaration of James Moran, In House Counsel; Declaration of Philip Christmas, Financial officer; Declaration of Eric Johnson, Receiver. Clearly, Fraserside IP LLC is the owner of all copyrights and trademarks claimed, and has standing to bring this lawsuit.

## CONCLUSION

Defendant attempts to escape this lawsuit by denying that he can be served at that the very address he used to register his website. Because the Rules of Civil Procedure adopted by the British Virgin Islands permit such service, the Court must deny the motion to dismiss.

Defendant also cannot obtain dismissal on his affidavit that he does not own the website. The allegations of the Complaint govern for a motion to dismiss, and the Court cannot consider his self-serving affidavit.

Boiled down to its essence, Defendant's argument as to personal jurisdiction is that claims for infringement of U.S. trademarks and copyrights, rightfully owned by an Iowa company, and infringed upon to produce income from Internet users and advertisers in the U.S., may not be litigated in the United States. This argument is baseless. Defendant, by his action in targeting U.S. internet users and advertisers and infringing the copyrights and trademarks of an Iowa company, is properly and fairly under the jurisdiction of this Court. The due process requirements for Defendant to be haled into this court have been met.

Plaintiff's Complaint and the exhibits to this resistance show that Plaintiff rightfully owns United States Copyrights and Trademarks and therefore has standing to bring this action. Defendant has not met his burden in his Motion to Dismiss, and the Motion should be DENIED.


DATED:  November 23, 2011                 Respectfully submitted,

                                          By:

                                                 /s/ Chad L. Belville
                                                 cbelville@azbar.org
                                                 Chad  Belville, Attorney at Law
                                                 Attorney for Plaintiff
                                                 Iowa Bar # 015731

| Physical Address | 304 East Beth Drive |
| --- | --- |
| | Phoenix, AZ 85042 |

MAILING ADDRESS:                    P.O. Box 17879
                                    Phoenix, AZ 85066

                                    Telephone:  602-904-5485
                                    FAX:  602-297-6953
                                    E-mail cbelville@azbar.org
                                    ATTORNEY FOR PLAINTIFF

Certificate of Service

I, Chad Belville, Attorney for Plaintiff, hereby certify that on November 23, 2011 a copy of this Resistance to Defendant's Motion to Dismiss was served upon the Attorneys for Defendant, listed as Connie M. Alt, Jennifer Rinden, Valentin Gurvits, and Evan Fray-Witzer, through the Courts Electronic Case Filing System.

/s/ Chad L. Belville

## EXHIBIT LIST

Exhibit A        Alexa regional audience statistics.

Exhibit B        DrTuber.com Sign Up Page

Exhibit C        Premium Membership sign up page

Exhibit D        Page 2, Premium Membership sign up page

Exhibit E        DrTuber.com webmaster program home page

Exhibit F        Assignment of Copyright and Common Law Copyright Rights

Exhibit G        Assignment of Trademark Rights

Exhibit H        DrTuber.com Whois showing Igor Kovalchuk as the owner

Exhibit I        Affidavit of Service

Exhibit J-M        Declaration of Berth Milton, Chairman & CEO, Director; Declaration of Johan Gillborg, CFO; Declaration of James Moran, In House Counsel; Declaration of Philip Christmas, Financial officer

Exhibit N        Declaration of Receiver Eric Johnson